# No. 21-88 (L)

## No. 21-96 (XAP), No. 21-114 (XAP)

## United States Court of Appeals
### *for the*
### Second Circuit

CASEY CUNNINGHAM, CHARLES E. LANCE, STANLEY T. MARCUS, LYDIA PETTIS, and JOY VERONNEAU, individually and as representatives of a class of participants and beneficiaries on behalf of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan,

*Plaintiffs-Appellants-Cross-Appellees,*

– v. –

CORNELL UNIVERSITY, THE RETIREMENT PLAN OVERSIGHT COMMITTEE, MARY G. OPPERMAN, and CAPFINANCIAL PARTNERS, LLC D/B/A CAPTRUST FINANCIAL ADVISORS,

*Defendants-Appellees-Cross-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF FOR DEFENDANT-APPELLEE-CROSS-APPELLANT
### CAPFINANCIAL PARTNERS, LLC

ERIC S. MATTSON
JOSEPH R. DOSCH
CAROLINE A. WONG
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant-Appellee-Cross-Appellant CapFinancial Partners, LLC*

## <u>CORPORATE DISCLOSURE</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, CapFinancial

Partners, LLC, d/b/a CAPTRUST Financial Advisors ("CAPTRUST"), states that

CAPTRUST is a wholly owned subsidiary of The CapFinancial Group, LLC, a

North Carolina limited liability company. The CapFinancial Group, LLC is

privately owned and is not publicly traded on any stock exchange. No publicly

traded entity owns any interest in The CapFinancial Group, LLC.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ........................................................i

JURISDICTIONAL STATEMENT ..............................................1

INTRODUCTION .......................................................................2

STATEMENT OF THE ISSUES...............................................4

STATEMENT OF THE CASE...................................................4

    I.    The Cornell Retirement Plans ......................................4

    II.   CAPTRUST's Advisory Services To The Plans.................5

    III.  Procedural History........................................................8

        A.    The Complaint.................................................8

        B.    Motions To Dismiss ....................................10

        C.    Summary Judgment .....................................11

        D.    Motion To Strike The Jury Demand ..........14

SUMMARY OF ARGUMENT ................................................15

STANDARD OF REVIEW ......................................................16

ARGUMENT ...........................................................................17

    I.    The District Court Correctly Rejected Three Of The Imprudence Theories In Count V........................................17

        A.    The District Court Appropriately Considered The Allegations As A Whole. ...........................................17

        B.    The District Court Correctly Dismissed Three Imprudence Theories, But In Any Event The Dismissal Had No Effect On Summary Judgment. ...................19

ii

II.   The District Court Correctly Granted Summary Judgment For
      CAPTRUST On The Claims In Count V That Survived The
      Motions To Dismiss. ...............................................................23

      A.   Plaintiffs Failed To Raise A Genuine Issue Of Material
           Fact About The Challenged Investment Options.....................24

      B.   Plaintiffs' Attempts To Impugn CAPTRUST's Process
           Lack Merit. ...............................................................................30

      C.   Plaintiffs Failed To Raise A Genuine Issue Of Material
           Fact About Lower-Cost Share Classes. ...................................33

III.  Plaintiffs Have Waived All Arguments About Any Other
      Claims Against CAPTRUST.................................................................34

IV.   Plaintiffs Are Not Entitled To A Jury Trial. .......................................36

CONCLUSION ...............................................................................................39

iii

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*In re Beacon Assocs. Litig.*,
   818 F. Supp. 2d 697 (S.D.N.Y. 2011) ................................................................26

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................19

*Brotherston v. Putnam Investments, LLC*,
   907 F.3d 17 (1st Cir. 2018) ................................................................23

*Brown v. Sandimo Materials*,
   250 F.3d 120 (2d Cir. 2001) ................................................................17

*Cates v. Columbia Univ.*,
   No. 16-cv-6524, Dkt. 140 (S.D.N.Y. Jan. 25, 2018) .........................................39

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
   494 U.S. 558 (1990) ................................................................36

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ................................................................14, 16, 37, 38

*Coulter v. Morgan Stanley & Co. Inc.*,
   753 F.3d 361 (2d Cir. 2014) ................................................................27

*Davis v. Washington Univ.*,
   960 F.3d 478 (8th Cir. 2020) ................................................................18

*Divane v. Northwestern Univ.*,
   953 F.3d 980 (7th Cir. 2020) ................................................................39

*Duvall v. Craig*,
   15 U.S. 45 (1817) ................................................................38

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ................................................................18

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ................................................................37

iv

*Granfinanciera S.A. v. Nordberg*,
  492 U.S. 33 (1989)......................................................................36, 37

*Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
  302 F.3d 18 (2d Cir. 2002) ....................................................27

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ...............................................21

*Lia v. Saporito*,
  541 F. App'x 71 (2d Cir. 2013) ...........................................29

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011) ...............................................20

*Mahoney v. JJ Weiser & Co.*,
  339 F. App'x 46 (2d Cir. 2009) ...........................................16

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
  811 F.3d 998 (8th Cir. 2016) ...............................................20

*McCool v. AHS Mgmt. Co.*,
  No. 19-cv-1158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021)........................39

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*,
  798 F.3d 125 (2d Cir. 2015) ................................................39

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .................................16, 19, 24

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)............................................................27

*Pereira v. Farace*,
  413 F.3d 330 (2d Cir. 2005) ...........................14, 15, 37, 38

*Perez v. Silva*,
  185 F. Supp. 3d 698 (D. Md. 2016)....................................39

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
  449 F. App'x 57 (2d Cir. 2011) ...........................................22

*Ramos v. Banner Health*,
    No. 15-cv-2556, 2019 WL 1558069 (D. Colo. Apr. 10, 2019) .........................39

*Rinehart v. Lehman Bros. Holdings Inc.*,
    817 F.3d 56 (2d Cir. 2016) ...................................................................................18

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    No. 15-cv-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016)...................18, 20

*Sacerdote v. New York Univ.*,
    No. 16-cv-6284, Dkt. 122 (S.D.N.Y. Dec. 19, 2017)........................................39

*Short v. Brown Univ.*,
    320 F. Supp. 3d 363 (D.R.I. 2018) .....................................................................21

*Silverman v. Mut. Ben. Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998) ..................................................................................25

*Sweda v. Univ. of Penn.*,
    923 F.3d 320 (3d Cir. 2019) ...............................................................................19

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) .............................................................................21

*Tracey v. MIT*,
    395 F. Supp. 3d 150 (D. Mass. 2019).................................................................39

*Vellali v. Yale Univ.*,
    308 F. Supp. 3d 673 (D. Conn. 2018).................................................................21

*White v. Chevron Corp.*,
    No. 16-cv-793, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ..........................18

**Statutes**

29 U.S.C. § 1106(a)(1).........................................................................................35

29 U.S.C. § 1132(a)(2)................................................................................9, 11, 14

## <u>GLOSSARY OF CITATION ABBREVIATIONS</u>

| Abbreviation | Description |
|---|---|
| A_ | Plaintiffs-Appellants' Appendix |
| Br. _ | Plaintiffs-Appellants' Opening Brief |
| DJA_ | Defendants-Appellees/Cross-Appellants' Joint Appendix |
| DJSA_ | Defendants-Appellees/Cross-Appellants' Joint Special Appendix |
| Dkt. _ | District Court Docket<br><br>(Note: Pin cites refer to the ECF Page IDs stamped at the top of the document) |
| SA_ | Plaintiffs-Appellants' Special Appendix |

## **JURISDICTIONAL STATEMENT**

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. § 1132(a)(2).

The district court entered final judgment on December 22, 2020. SA1–8. Plaintiffs filed a notice of appeal on January 12, 2021. A2069–2070. CAPTRUST filed a notice of conditional cross-appeal on January 19, 2021. DJA346–348. This Court has jurisdiction under 28 U.S.C. § 1291.

1

**INTRODUCTION**

Plaintiffs are participants in two retirement plans sponsored by Cornell University. They brought this class action in August 2016, asserting claims for breach of fiduciary duty under ERISA and contending that the plans' investment options cost too much and underperformed. The initial complaint named as defendants Cornell and its Retirement Plan Oversight Committee (the "Committee"), but Plaintiffs later filed an amended complaint that added CAPTRUST, the investment advisor Cornell retained to advise the Committee. Despite its volume, the amended complaint mentions CAPTRUST only a handful of times, with little indication about what it supposedly did wrong.

After discovery, the district court entered summary judgment in favor of CAPTRUST on all claims, and rightly so. ERISA requires fiduciaries to use a prudent process, and CAPTRUST's process fell comfortably and indisputably within that standard. In 2012, at the first Committee meeting held just a few weeks after CAPTRUST was hired, CAPTRUST provided extensive commentary and recommendations about the plans' investment options and structure. CAPTRUST then worked closely with the Committee on a major project, namely developing an investment policy statement. And in 2013, at the first Committee meeting after the Committee approved the new statement, CAPTRUST provided a comprehensive analysis of and recommendations about the plans' options. Plaintiffs' own expert

opined that these recommendations reflected a "best-in-class" lineup. Nothing in ERISA required CAPTRUST to do anything differently.

Plaintiffs contend that the case should be sent back to the district court for further proceedings on three imprudence theories that were dismissed at the pleading stage and other theories that failed at summary judgment. But the district court did not err in ruling in Defendants' favor. Many of the reasons for affirmance are discussed in Cornell's brief, so CAPTRUST joins that brief in full. It submits this brief to focus on additional, independent reasons why the claims against CAPTRUST have no merit.

Defendants have conditionally cross-appealed to challenge the district court's denial of their motion to strike Plaintiffs' jury demand. As numerous courts have recognized in similar situations, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), confirms that Plaintiffs have no right to a jury trial on their claims: Plaintiffs' claims are equitable, not legal, and so fall outside the Seventh Amendment's jury trial guarantee. If this Court reverses any part of the judgment in favor of Defendants, it should also reverse the ruling on Plaintiffs' jury demand.

## STATEMENT OF THE ISSUES

1.     Whether the district court correctly rejected three of the six imprudence theories in Count V of the complaint.

2.     Whether the district court correctly granted summary judgment in CAPTRUST's favor on the remaining claims in Count V.

3.     If any claim is remanded for further proceedings, whether the district court erred in holding that Plaintiffs have a right to a jury trial.

## STATEMENT OF THE CASE

### I.     The Cornell Retirement Plans

This case involves two retirement plans that Cornell University offers its employees: the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca, and the Cornell University Tax Deferred Annuity Plan. SA9. The Plans are defined contribution plans, which means each employee who chooses to participate in the Plans has an individual account to which Cornell or the employee contributes money. A53–55 (Compl. ¶¶ 9–10, 13–14); A62 (Compl. ¶ 32). Participants choose how to allocate their money across the investment options made available through the Plans. A55 (Compl. ¶ 18). The value of each participant's account depends on how much money is contributed to it and the market performance of the investments selected by the participant, minus any fees. A53–55 (Compl. ¶¶ 10, 14).

4

Cornell administers the Plans, including by choosing a lineup of investment options to offer to participants. SA11; A57 (Compl. ¶ 24). The university formed the Retirement Plan Oversight Committee in 2010 to monitor the investment options and otherwise oversee the Plans going forward. SA11–12.

## II.     CAPTRUST's Advisory Services To The Plans

CAPTRUST is an investment advisory firm that Cornell retained in December 2011 to provide advice about which investment options Cornell should consider offering to participants. *See* SA12. The scope of CAPTRUST's fiduciary obligations was limited: It became a fiduciary "with regard to the selection of investment manager(s) or mutual fund(s) available to the Plans within the platform provided by the Plan's Administrator." *Id.*; DJA109 (12/8/11 Services Agreement). "[T]he platform provided by the Plan's Administrator" means the platforms chosen by Cornell, which were maintained by two service providers, TIAA and Fidelity. SA12; *see also* DJA109 (12/8/11 Services Agreement). Cornell retained "final decision-making authority" with regard to the Plans and "responsibility for the implementation of any recommendations" made by CAPTRUST. DJA109 (12/8/11 Services Agreement).

In January 2012, a few weeks after it was hired, CAPTRUST gave its first presentation to the Committee about the Plans' investment lineup. SA12. CAPTRUST reviewed its methodology for monitoring investment options, SA14–

5

15, and provided detailed observations about the Plans' existing investment structure, noting "[s]everal underperforming funds that we would eliminate on a go forward basis" and "[m]any funds in asset classes we would not recommend the plan utilize." SA15; A1324–1326 (1/11/12 Meeting Materials); *see also* A321–323 (1/11/12 Meeting Minutes). CAPTRUST further recommended that Cornell consider the "[u]se of lowest priced share classes" for the Plans' investment options. SA17; A1335 (1/11/12 Meeting Materials).

During that Committee meeting and others in 2012, CAPTRUST discussed concrete steps to continue monitoring the Plans' investment options and to "condense[]" and "streamline[]" the lineup through a tiered investment structure, a concept the Committee approved in July 2012. *See, e.g.*, SA15; A1327 (1/11/12 Meeting Materials); A321–323 (1/11/12 Meeting Minutes); A336–339 (4/13/12 Meeting Materials); A328–329 (7/24/12 Meeting Minutes). In addition, in close consultation with the Committee, CAPTRUST drafted, refined, and finalized an Investment Policy Statement, which the Committee approved in November 2012 after giving extensive input. SA15; *see also, e.g.*, DJA302–323 (4/12/12 email attaching draft Statement); A327–329 (7/24/12 Meeting Minutes); DJA325–327 (11/19/12 Meeting Minutes). The Statement provides guidelines for evaluating and potentially replacing investment options available to participants. SA15; *see also* A383–404 (final Statement). It states that CAPTRUST will give the Committee

6

"relative rankings [of investment alternatives] against appropriate indexes and within appropriate peer groups," and that the Committee will "review the Plans' investment alternatives at least on an annual basis." SA15 (quotation marks omitted); *see also* A386, A389 (final Statement).

In July 2013, at the Committee's first meeting after it approved the Statement, CAPTRUST presented a three- and five-year benchmarking analysis of the Plans' entire investment lineup—more than 250 options. SA15; *see also* A609, A633–641 (7/31/13 Meeting Materials). CAPTRUST also recommended investment menus for a restructured lineup of "core investment options." SA15–16; *see also* A605 (7/31/13 Meeting Materials).

After providing these recommendations, CAPTRUST continued to monitor the investment options and discuss potential lineup changes with the Committee. *See, e.g.*, SA16–17, SA36–38, SA42–43; *see also, e.g.*, A1130–1152 (Committee meeting minutes from December 2013 through December 2015). After careful deliberation over the pros and cons of making extensive changes to the Plans' lineup and limiting participants' choices, the Committee decided in March 2016 to eliminate hundreds of options, as recommended by CAPTRUST. SA17; *see also* A373–374 (3/31/16 Meeting Minutes).

The appropriateness of CAPTRUST's advice was corroborated by the expert report of Conrad Ciccotello, a finance professor with extensive experience in the

oversight of university retirement plans. Professor Ciccotello opined that CAPTRUST gave Cornell "consistent and sensible advice" that was tailored to the circumstances of Plans. DJA53, DJA62–74 (Ciccotello Rep. at 5, 14–26 (Summary & ¶¶ 50–92)). He further opined that CAPTRUST appropriately monitored the performance of the Plans' investment options, including the two options Plaintiffs said they were challenging (the CREF Stock Account and the TIAA Real Estate Account), and that CAPTRUST provided Cornell relevant information to support Cornell's decisions about the Plans' lineup. DJA53, DJA81–85 (Ciccotello Rep. at 5, 33–37 (Summary & ¶¶ 114–129)). Plaintiffs' own expert mostly agreed: She touted CAPTRUST's recommendation to Cornell as a "best-in-class" lineup. A732–733 (Dominguez Rep. ¶¶ 117–120).

## III.  Procedural History

### A.  The Complaint

Plaintiffs are current or former participants in the Plans. SA11; A56 (Compl. ¶¶ 19–23). They sued Cornell and the Committee for alleged breaches of fiduciary duty under ERISA in August 2016. *See* A1. Plaintiffs later amended their complaint to name two additional Defendants: Cornell's Vice President for Human Resources and CAPTRUST, although only four of the amended complaint's many paragraphs even mention CAPTRUST. *See* A47–48, A58–59 (Compl. ¶¶ 1, 29–31).

8

As relevant to this appeal, Counts III and IV of the amended complaint asserted that Defendants breached the duty of prudence and caused prohibited transactions under ERISA by allowing the Plans to pay excessive fees to the Plans' recordkeepers, TIAA and Fidelity. A108–113 (Compl. ¶¶ 122–141); *see also* A172–175 (Compl. ¶¶ 220–232). Count V asserted that Defendants breached the duty of prudence by offering: (i) the CREF Stock Account, the TIAA Real Estate Account, and other purportedly underperforming investment options, A133–159 (Compl. ¶¶ 170–202); (ii) high-cost share classes when lower-cost share classes were allegedly available, A113–124 (Compl. ¶¶ 142–152); (iii) options with too many "layers" of fees, A103–108 (Compl. ¶¶ 115–121); and (iv) too many options, A124–133 (Compl. ¶¶ 153–169); *see also* A176–180 (Compl. ¶¶ 233–247).

The amended complaint asserted other prudence and prohibited transaction claims in Counts I, II, VI, and VII (mislabeled in the complaint as Count VIII). It also asserted claims for breach of the duty of loyalty in Counts I, III, and V. *See* A167–184 (Compl. ¶¶ 208–257). None of those claims are at issue on appeal.

The amended complaint sought various forms of relief under 29 U.S.C. § 1132(a)(2). That requested relief included an order requiring Defendants to "make good to the Plans all losses to the Plans resulting from each breach of fiduciary duty"; an order that Defendants pay the Plans "the amount equaling all sums received by the conflicted recordkeepers as a result of recordkeeping and

investment management fees"; an order requiring "all accountings necessary to determine the amounts Defendants must make good to the Plans"; removal of any fiduciaries found liable; a "[s]urcharge against Defendants and in favor of the Plans"; reformation of the Plans; and "other equitable or remedial relief as the Court deems appropriate." A185–186.

### B. Motions To Dismiss

Defendants moved to dismiss Plaintiffs' amended complaint, and the district court granted the motions in part and denied them in part. *See* SA54–79.

The only theories against CAPTRUST that survived the motions to dismiss appeared in Count V. The district court considered six distinct theories in that count alleging how Defendants supposedly breached their duty of prudence:

    (1)    offering the CREF Stock Account and TIAA Real Estate Account through the Plans, despite those options' allegedly high fees and poor performance;

    (2)    offering other investment options with allegedly high fees and poor performance;

    (3)    offering higher-cost share classes of certain options instead of lower-cost share classes;

    (4)    offering options with too many "layers" of fees;

    (5)    failing to consolidate the options into a "core lineup"; and

    (6)    failing to monitor the options until October 1, 2014, and then monitoring only "core" investment options after then.

*See* SA66–67.

The district court held that only the first three of these theories were viable. SA67–71. As to the fourth theory, the court explained that the mere fact that options had "layers" of fees was insufficient to allow an inference of imprudence. SA67. As to the fifth theory, Plaintiffs did "not allege that any plan participant was actually harmed by defendants' failure to reduce the number of options available." *Id.* And as to the sixth theory, Plaintiffs failed to offer any authority for their view that reviewing a subset of core investment options was insufficient to satisfy the duty of prudence. SA71.

Count III also survived the motion to dismiss, but only as to the Defendants other than CAPTRUST (the "Cornell Defendants"). The district court dismissed Count III as to CAPTRUST because it "had no fiduciary responsibilities as to the decisions regarding plan administration alleged in Count III"—that is, decisions about which recordkeepers to hire and at what price. SA74–75. Plaintiffs have not challenged that holding on appeal.

### C. Summary Judgment

Two years later, after extensive discovery, the district court granted summary judgment in CAPTRUST's favor on all claims that survived the motions to dismiss. SA46–47.

First, the district court granted summary judgment in favor of all Defendants on the claim that they should have removed the CREF Stock and TIAA Real Estate

11

Accounts from the Plans' lineup. SA32–40, SA46–47. Plaintiffs claimed that those options underperformed the Russell 3000 Index and various other sets of funds, but they offered no evidence that those were appropriate benchmarks, much less that they should have led a prudent fiduciary to remove the challenged options. SA34–35. In addition, the undisputed facts showed that the Committee "reviewed the results of CAPTRUST's presentations" analyzing these two options, "asked questions" about how disruptive it would be to replace them, evaluated the options in light of quantitative and qualitative factors, and concluded that "both provided strong historical returns, were valuable from a diversification perspective, and were popular among plan participants." SA37–38 (quotation marks omitted). This evidence of Defendants' "discussions about the pros and cons" of the CREF Stock and TIAA Real Estate Accounts was "fatal" to this claim. SA38 (quoting *Tibble v. Edison Int'l*, 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015)).

Second, the district court granted summary judgment for Defendants on the claim that they should have removed other purportedly underperforming investment options from the lineup as of either 2010 or 2013. Although the complaint had alleged that more than 175 investment options in addition to the CREF Stock and TIAA Real Estate Accounts underperformed their peers (A134–141), Plaintiffs offered evidence of underperformance over three- and five-year

12

periods for only 38 options as of 2010, and they offered no evidence that this information should have led a prudent fiduciary to remove those options. SA40–42. The district court also rejected Plaintiffs' argument that the options the Committee removed in 2016 should have been removed as early as 2013. Plaintiffs "offer[ed] no evidence" that the timing of the Committee's decision to remove the funds was imprudent, especially given the undisputed evidence that, from 2013 through 2016, Defendants "continued to monitor and review the performance of these funds as part of a larger strategy to streamline the Plans' lineups, [] reviewed proposals for a tiered structure, found investment alternatives for underperforming funds, and assessed participant disruption with eliminating funds in the Plans." SA42–44. As with their claim about the CREF Stock and TIAA Real Estate Accounts, Plaintiffs failed to provide evidence allowing a conclusion that Defendants' "investigation and process" with regard to these other challenged funds was imprudent. SA47.

Third, the district court granted summary judgment for CAPTRUST on Plaintiffs' claim regarding the use of lower-cost share classes. The court found it dispositive that CAPTRUST advised Cornell to "consider the use of lowest priced share classes" in its initial presentation in January 2012, "three weeks after it was retained." SA47 (quotation marks and brackets omitted). In light of this undisputed

13

fact, the court held that no reasonable factfinder could conclude that CAPTRUST had imprudently failed to consider the use of lower-cost share classes. *Id.*

### D. Motion To Strike The Jury Demand

The district court also considered Defendants' motion to strike the jury demand. DJSA9–16. The court applied the two-part test for whether statutory claims must be tried to a jury. First, courts "compare the statutory actions to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity"; second, they "examine the remedy sought and determine whether it is legal or equitable in nature." DJSA10 (quoting *Tull v. United States*, 481 U.S. 412, 417 (1987)).

The first step of this test "favor[ed] the conclusion" that Plaintiffs had no right to a jury trial because their claims "derive[d] from the law of trusts that was heard in equity." DJSA11. As to the second step, there was "no serious question that, of the types of relief sought in the Amended Complaint, equitable relief predominates." *Id.* Nevertheless, because Plaintiffs sought monetary relief, the district court concluded that *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), gave them a right to a jury trial. DJSA11–16. The district court noted that the Supreme Court's intervening decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), might be inconsistent with *Pereira*. DJSA13–15. But the court felt constrained to

14

follow *Pereira* "unless and until the case is overruled." DJSA15. It therefore denied Defendants' motion to strike the jury demand. DJSA16.

## SUMMARY OF ARGUMENT

I.     Consistent with the theories of imprudence framed in the complaint, the district court considered Plaintiffs' hundreds of allegations as a whole, drew reasonable inferences in Plaintiffs' favor, and concluded that three of their theories supported a claim while three others did not. The court's rejection of the latter three theories—that is, the theories that Defendants imprudently offered investment options with too many "layers" of fees, offered too many funds, and failed to monitor all the options—was correct. Even if those theories had proceeded to summary judgment, they would have failed at that stage too.

II.     The district court correctly granted summary judgment in CAPTRUST's favor because Plaintiffs failed to raise a genuine factual dispute about the element of fiduciary breach.

First, Plaintiffs failed to offer evidence that CAPTRUST acted imprudently with regard to the CREF Stock Account, the TIAA Real Estate Account, or any other allegedly underperforming investment options. CAPTRUST developed customized benchmarks to measure the performance of the CREF Stock and TIAA Real Estate Accounts and reasonably recommended that they remain in the Plans' lineup. In addition, Cornell was *required* under an agreement with a third-party

15

service provider to continue offering the CREF Stock Account on its platform. CAPTRUST had no duty to recommend that Cornell breach that agreement or change platforms.

Second, Plaintiffs failed to offer evidence suggesting that CAPTRUST acted imprudently with regard to lower-cost share classes. Three weeks after it was retained, CAPTRUST recommended to the Committee that it consider the use of lower-cost share classes. The district court correctly held that this fulfilled CAPTRUST's fiduciary duties, and Plaintiffs have not challenged that holding on appeal.

III.    The judgment in favor of Defendants should be affirmed. If it is, Defendants' cross-appeals will be moot. But if this Court remands any claim for further proceedings, it should instruct the district court to hold a bench trial, not a jury trial. The Seventh Amendment confers the right to a jury trial only on plaintiffs who seek legal relief, not equitable relief, and *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), confirms that monetary relief for a breach of fiduciary duty under ERISA is equitable relief. Plaintiffs thus have no right to a jury trial.

## STANDARD OF REVIEW

The district court's decisions on CAPTRUST's motion to dismiss, motion for summary judgment, and motion to strike the jury demand are reviewed de novo. *PBGC v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 720 (2d Cir. 2013)

16

(motion to dismiss); *Mahoney v. JJ Weiser & Co.*, 339 F. App'x 46, 48 (2d Cir. 2009) (summary judgment); *Brown v. Sandimo Materials*, 250 F.3d 120, 125 (2d Cir. 2001) (jury demand).

## ARGUMENT

I. **The District Court Correctly Rejected Three Of The Imprudence Theories In Count V.**

A. **The District Court Appropriately Considered The Allegations As A Whole.**

Plaintiffs' amended complaint was voluminous. It included more than 250 paragraphs, including more than 100 paragraphs under the general heading "Defendants Breached Their Fiduciary Duties And Committed Prohibited Transactions." *See* A98–159 (Compl. ¶¶ 99–202). Plaintiffs grouped these allegations under multiple subheadings, including subheadings about investment options that purportedly underperformed and cost too much, A133–159 (Compl. ¶¶ 170–202), the use of higher-cost share classes, A113–124 (Compl. ¶¶ 142–152), options with too many "layers" of fees, A103–108 (Compl. ¶¶ 115–121), and options that were allegedly too numerous, A124–133 (Compl. ¶¶ 153–169). All of these allegations were incorporated into Count V. A176 (Compl. ¶ 233); *see also* A176–180 (Compl. ¶¶ 233–247).

Plaintiffs contend that the district court improperly parsed Count V on "an allegation-by-allegation basis." Br. 23. But that is not what happened. Instead,

taking its cue from the amended complaint, the district court addressed the six

*categories* of allegations Plaintiffs offered in support of their six distinct theories

of imprudence. SA66–71. Courts routinely address prudence claims in this manner.

*See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 426–28 (2014)

(separately evaluating ERISA imprudence theories about public and non-public

information); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 66 (2d Cir.

2016) (separately addressing two imprudence theories); *Rosen v. Prudential Ret.*

*Ins. & Annuity Co.*, No. 15-cv-1839, 2016 WL 7494320, at *13–16 (D. Conn. Dec.

30, 2016) (separately addressing imprudence theories based on higher-cost funds,

failure to disclose information, and failure to monitor), *aff'd*, 718 F. App'x 3 (2d

Cir. 2017); *Davis v. Washington Univ.*, 960 F.3d 478, 483–87 (8th Cir. 2020)

(affirming dismissal of prudence claim based on underperforming funds, but

reversing dismissal of prudence claim based on failure to offer lower-cost share

classes); *White v. Chevron Corp.*, No. 16-cv-793, 2017 WL 2352137, at *12 (N.D.

Cal. May 31, 2017) (separately addressing "three theories" of imprudence,

including theories that defendants should have offered cheaper mutual funds,

lower-cost share classes, and cheaper alternative products), *aff'd*, 752 F. App'x 453

(9th Cir. 2018).

     The cases Plaintiffs rely on (Br. 22–23) are not to the contrary. Those cases

merely caution that, although prudence claims depend on fiduciaries' *process* in

18

managing plans, rather than the outcome of that process, courts must draw inferences in plaintiffs' favor even if no single allegation "directly addresses the process." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009); *see also Sweda v. Univ. of Penn.*, 923 F.3d 320, 332 (3d Cir. 2019) (district courts must draw all "reasonable inferences" in plaintiffs' favor). That is what the district court did here. Even though the allegations said nothing about Defendants' process for selecting investment options, the court considered the allegations in context and inferred that they stated a claim based on several theories of imprudence. SA66–71. It appropriately assessed the allegations "as a whole." *PBGC*, 712 F.3d at 719. Plaintiffs want this Court to hold that assessing allegations "as a whole" gives plaintiffs free rein to smuggle impermissible legal theories into a case by pleading them next to permissible ones. But that is not and should not be the law.

### B. The District Court Correctly Dismissed Three Imprudence Theories, But In Any Event The Dismissal Had No Effect On Summary Judgment.

Not only was the district court's approach to assessing Plaintiffs' imprudence theories appropriate, so was its rejection of three of those theories. And even if the district court erred, remand would be pointless. Plaintiffs still offered—and the district court still considered—evidence about the dismissed theories at summary judgment, and none of that evidence lent merit to them. As a practical matter, the dismissal made no difference.

19

***"Layers" of Fees.*** The district court correctly rejected the theory that investment options with multiple "layers" of fees allowed an inference of imprudence. As the court explained, there is no reason to believe that merely selecting an investment option with "layers" or categories of fees is imprudent. Plaintiffs must instead plausibly allege that the *amount* of those fees, or the "overall fee," was too high. SA67; *see also Rosen*, 2016 WL 7494320, at \*14–15 (dismissing prudence claim against CAPTRUST premised in part on allegations about "layers of fees"), *aff'd*, 718 F. App'x 3 (2d Cir. 2017); *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1005 (8th Cir. 2016) (rejecting theory about "additional layer" of fees because plaintiffs "did not allege that the . . . fees were excessive"). Indeed, Plaintiffs alleged that the overall fees for hundreds of investment options were too high, and that those options underperformed—and the district court *allowed* that theory to proceed. SA66–68. Plaintiffs have no basis to now complain (and do not seriously attempt to argue, *see* Br. 23–25) that they should have also been allowed to proceed with an additional, separate theory that the mere number of "layers" of fees suggested imprudence.

***Number of Options.*** The district court also correctly rejected the theory that the number of investment options available to participants supported an imprudence claim. ERISA "encourages sponsors to allow more choice to participants in defined-contribution plans." *Loomis v. Exelon Corp.*, 658 F.3d 667,

673 (7th Cir. 2011); *see also Tibble*, 729 F.3d at 1134–35 ("[P]articipant choice is

the centerpiece of what ERISA envisions for defined-contribution plans."). Courts

have therefore endorsed the inclusion of many options in a plan, and have

uniformly rejected the theory that offering those options somehow suggests

imprudence. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)

(no imprudence where participants could choose among 26 investment options and

more than 2,500 mutual funds through a brokerage window); *Vellali v. Yale Univ.*,

308 F. Supp. 3d 673, 687 (D. Conn. 2018) ("[T]he duty of prudence claim is being

dismissed to the extent that it is based on too many investment offerings."); *Short

v. Brown Univ.*, 320 F. Supp. 3d 363, 369 (D.R.I. 2018) (collecting additional

cases).

Even if Plaintiffs had been permitted to move forward with a prudence claim

based on the sheer number of investment options in the Plans, that claim would

have failed at summary judgment. At its first presentation to the Committee, just a

few weeks after it was retained, CAPTRUST recommended that the Committee

redesign the Plans' menus to create a "condensed and consolidated 'tiered'

investment structure" with a "[s]treamlined fund line up." A1327 (1/11/12 Meeting

Materials); *see also* SA15. The Committee approved this concept in July 2012,

SA15, and after additional deliberation implemented it. SA15–17; *see also, e.g.*,

A1130–1152 (meeting minutes reflecting deliberation regarding changes to the

Plans' lineup); A373–374 (3/31/16 meeting minutes reflecting Committee's final

vote approving changes).

    ***Failure to Monitor.*** Finally, the district court correctly rejected the theory

that Defendants "fail[ed] to monitor any of the Plans' options before October 1,

2014, and monitor[ed] only 'core' investment options after that date." SA71. With

regard to CAPTRUST, Plaintiffs' sole argument was that CAPTRUST purportedly

"conceded" it did not monitor the Plans' options. Dkt. 91 at 27 (Pl. Opp. MTD

(citing CAPTRUST MTD Br. 19)). But CAPTRUST made no such concession.

Instead, in its motion to dismiss, CAPTRUST argued it had no fiduciary duty to

monitor the investments at issue. Dkt. 75 at 19 (CAPTRUST MTD). Because

Plaintiffs failed to advance meaningful arguments in support of their theory, the

district court was right to reject it. SA71; *cf. Poplar Lane Farm LLC v. Fathers of

Our Lady of Mercy*, 449 F. App'x 57, 58 (2d Cir. 2011) ("[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.").

    In any event, the undisputed facts at summary judgment confirmed that the

theory was baseless. CAPTRUST monitored and reported to the Committee about

all of the funds in the Plans' lineup both before and after October 2014. SA14–17;

*see also, e.g.*, A321–329, A633–641, A1130–1152 (meeting minutes and materials

pre- and post-October 2014). As this and other evidence make clear, Plaintiffs'

22

suggestion that CAPTRUST did nothing to review the Plans' investment options before July 2013 (*see, e.g.*, Br. 34–35) has no support. Between its retention in December 2011 and its quantitative benchmarking presentation to the Committee in July 2013, CAPTRUST evaluated the Plans' investment options, discussed with the Committee steps to monitor the options going forward and to "condense[]" and "streamline[]" the lineup, and helped develop an Investment Policy Statement with detailed guidelines for evaluating and potentially replacing investment options. *See, e.g.*, SA15; A1327 (1/11/12 Meeting Materials); A336–339 (4/13/12 Meeting Materials); A326–329 (7/24/12 Meeting Minutes); DJA325–327 (11/19/12 Meeting Minutes); *see also supra* at 5–8 (discussing this and other evidence of prudent process from December 2011 through July 2013).

In sum, Plaintiffs' "failure to monitor" theory was always a non-starter. The district court was correct to dismiss it, and even if that were not the case, the evidence presented at summary judgment established that the theory was baseless.

## II. The District Court Correctly Granted Summary Judgment For CAPTRUST On The Claims In Count V That Survived The Motions To Dismiss.

A claim for breach of fiduciary duty under ERISA has three elements: breach, loss, and causation. *See, e.g.*, *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 30–31 (1st Cir. 2018). The district court entered summary judgment in CAPTRUST's favor on Count V—the only count with claims against CAPTRUST

23

that survived the motions to dismiss—because no reasonable trier of fact could conclude that CAPTRUST breached the duty of prudence. SA46–47.[1]

### A. Plaintiffs Failed To Raise A Genuine Issue Of Material Fact About The Challenged Investment Options.

The district court correctly granted summary judgment in favor of CAPTRUST on Plaintiffs' challenges to the CREF Stock Account, the TIAA Real Estate Account, and dozens of other investment options with purportedly high fees and poor performance. ERISA's "prudent person" standard focuses on fiduciaries' process for selecting investment options, "not on its results." *PBGC*, 712 F.3d at 716. To show that CAPTRUST breached its fiduciary duty, Plaintiffs thus needed to show that it failed to "employ[] the appropriate methods to investigate and determine the merits of a particular investment" when taking actions within the scope of that duty. *Id.* Plaintiffs failed to carry that burden.

***CREF Stock Account.*** The CREF Stock Account is an objectively prudent investment option, and CAPTRUST had a robust process for monitoring it. The Account is offered by virtually all large university retirement plans across the country. SA33–34. It is a unique variable annuity with no readily available

---

[1] Because Plaintiffs failed to create a genuine issue of material fact on the element of breach, the district court never reached the element of causation. Plaintiffs' failure to create a genuine factual issue on causation is an independent basis for affirming summary judgment in Defendants' favor, for the reasons set forth in Section II.B of the Cornell Defendants' brief.

benchmarks because it invests in a broadly diversified stock portfolio consisting of

approximately 70% domestic equities and 30% foreign equities, including in

emerging international markets. *See* SA31. CAPTRUST developed a proprietary

custom benchmark to monitor the Account's performance, SA36–37, and it had a

team that spoke with the managers of the Account to help evaluate it. A1226

(Schmitt Dep. at 115:5–20). Plaintiffs contend that the CREF Stock Account

underperformed relative to the Russell 3000 Index and their expert's custom

benchmark, but they offered no evidence that these comparisons would have led a

prudent fiduciary to remove this option from the lineup.[2] SA34–35. For these

reasons and others explained in the district court's opinion (SA32–40) and in the

Cornell Defendants' brief at Section II.A, CAPTRUST did not breach any

fiduciary duty with respect to the CREF Stock Account.

Independent of those reasons, CAPTRUST was entitled to summary

judgment with regard to the CREF Stock Account because the Plans were

contractually required to offer that option. Long before Cornell retained

---

[2] Plaintiffs suggest that whether a prudent fiduciary would have removed the CREF Stock Account presents a question of causation. Br. 27. That is a red herring. Causation asks whether imprudence caused the alleged harm. *See, e.g.*, *Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) (causation requires "some causal link between the alleged breach of [the fiduciary's] duties and the loss plaintiff seeks to recover"). By contrast, whether a proposed benchmark or other piece of information should have led a fiduciary to take some act speaks to whether the fiduciary acted prudently in the first place—the issue of breach.

CAPTRUST, Cornell entered into an agreement with TIAA, a recordkeeper for the Plans that provided the platform through which many of the Plans' investment options were offered. The agreement required Cornell to include the CREF Stock Account in the Plans' lineup if it also wished to offer the TIAA Traditional Annuity—an investment product whose prudence Plaintiffs are not challenging. These facts are undisputed; Plaintiffs admitted them in their complaint, which alleges that "TIAA-CREF required that the CREF Stock Account . . . also be put in the plan," and that the Plans were "locked" into an arrangement in which the CREF Stock Account and certain other funds "could not be removed from the plan—even if the funds were not prudent investments or would become imprudent in the future." A84 (Compl. ¶ 78) (emphasis omitted); *see also* Dkt. 289 ¶ 9 (Plaintiffs admitting these facts again at summary judgment).

CAPTRUST agreed to act as a fiduciary only with regard to "the selection of investment manager(s) or mutual fund(s) available to the Plans *within the platform provided by*" Cornell. SA12 (emphasis added); *see also* DJA109 (12/8/11 Services Agreement). That platform, which Cornell obtained through its agreement with TIAA, *required* the inclusion of the CREF Stock Account. Even if it perceived the Account as questionable—and it did not—CAPTRUST had no fiduciary duty to recommend its removal. *See, e.g.*, *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 709 (S.D.N.Y. 2011) (investment advisor could not be liable for failure to take

26

actions that it lacked the authority to take). Nor did CAPTRUST have a fiduciary duty to go beyond its contract with Cornell and recommend that Cornell transition to an entirely different platform. *See Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002) ("[W]here parties negotiate the terms of a contract governing a retirement plan, the adherence to those terms [by a contracting party] . . . cannot constitute a breach of its fiduciary duties."). The only fiduciary duty CAPTRUST owed was a duty to provide advice about the selection of options "within the platform provided" by Cornell, and that is what it did.

In the district court, Plaintiffs argued that CAPTRUST's fiduciary duties were broader because CAPTRUST provided services beyond investment advice, including due diligence, plan administration, vendor analysis, vendor benchmarking, vendor scoring, and real-time access to industry research. *See* Dkt. 311 at 5–8. But under the plain terms of its contract with Cornell, CAPTRUST had no fiduciary duties with regard to those services. *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (a service provider "may be an ERISA fiduciary with respect to certain matters but not others"); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (the "threshold question" in every ERISA fiduciary breach case is whether the defendant "was acting as a fiduciary . . . when taking the action subject to complaint"). The fact that CAPTRUST provided those other services is therefore irrelevant.

27

*TIAA Real Estate Account.* Like the CREF Stock Account, the TIAA Real Estate Account is an objectively prudent investment option. CAPTRUST monitored it through a robust process similar to its process for the CREF Stock Account. *See, e.g.*, SA35–38. In addition, in contrast to real estate investment trusts, the TIAA Real Estate Account holds actual real estate properties, so CAPTRUST developed a custom benchmark comprised of real estate holdings. DJA106 (Strodel Dep. at 145:8–24). Plaintiffs offered no evidence that a prudent fiduciary would have measured the TIAA Real Estate Account's performance against Plaintiffs' proposed alternative benchmarks. In fact, when compared to one of Plaintiffs' proposed benchmarks, the TIAA Real Estate Account *over*performed for some five- and ten-year periods. SA35. Plaintiffs' own expert admitted that the TIAA Real Estate Account was "a strong candidate on performance." *See* Dkt. 311 at 13. In short, Plaintiffs failed to support their allegations of underperformance with evidence sufficient to create a genuine issue of material fact.

*Other Investment Options.* Plaintiffs also contend that Defendants acted imprudently with regard to dozens of other purportedly underperforming funds by failing to remove them from the Plans' lineup sooner than they did.

To begin, the Court should reject this theory because Plaintiffs waived it. When briefing the then-contested issue of class certification, Plaintiffs told the district court that they "asserted claims for underperformance damages arising

28

from two options[,] the CREF Stock Account and the TIAA Real Estate Account," and they argued that a class should be certified because classes had been certified in other cases challenging only those two options. Dkt. 189 at 8, 10. Plaintiffs' decision to focus exclusively on the CREF Stock Account and the TIAA Real Estate Account was explicit and strategic. They waived their right to challenge dozens of other investment options beyond those two, or are estopped from doing so. *Cf. Lia v. Saporito*, 541 F. App'x 71, 73–74 (2d Cir. 2013) (applying estoppel to bar plaintiff from taking a position inconsistent with his previous position).

Even if Plaintiffs had not waived this theory, it would fail. Plaintiffs acknowledge that "CAPTRUST recommended eliminating" these additional funds "in January 2012." Br. 47–48 (quotation marks and brackets omitted); *see also* A1324–1327 (1/11/12 Meeting Materials). Given the significance of this recommended change and the disruption it could cause for participants, *see* DJA59–62 (Ciccotello Rep. at 11–14 (¶¶ 38–48)), the Committee reasonably took time to consider all of its implications before implementing it. But Plaintiffs' concession is an independent reason to affirm summary judgment in favor of CAPTRUST.

29

**B.      Plaintiffs' Attempts To Impugn CAPTRUST's Process Lack Merit.**

Plaintiffs assert that CAPTRUST's process was flawed because, by their reckoning, CAPTRUST "failed to review the Plans' investments" until July 2013, and then conducted an analysis only to provide "fiduciary cover." *See, e.g.*, Br. 34–35. Those assertions are unsupported by the record, which shows CAPTRUST working diligently to advise on the Plans' investment menus between December 2011 (when it was retained) and July 2013. (Apart from their allegation that CAPTRUST should have recommended eliminating the CREF Stock and TIAA Real Estate Accounts, Plaintiffs do not criticize CAPTRUST's work after that latter date.) The benchmarking analysis CAPTRUST conducted in July 2013 met the guidelines in the Investment Policy Statement the Committee had recently approved, and the analysis yielded recommendations that Plaintiffs' expert referred to as a "best-in-class" lineup. A732–733 (Dominguez Rep. ¶¶ 117–120).

CAPTRUST began reviewing investment options with the Committee "from the very beginning, when they walked in the door." A1059–1060 (Bursic Dep. at 83:5–84:25). In January 2012—just three weeks after it was retained— CAPTRUST provided the Committee with observations and recommendations about the Plans' investment options and structure. SA15; A1324–1327 (1/11/12 Meeting Materials); A321–323 (1/11/12 Meeting Minutes). At that meeting and another in April 2012, CAPTRUST also discussed with the Committee a strategy

30

to "condense[]" and "streamline[]" the lineup. A1327 (1/11/12 Meeting Materials); A321–323 (1/11/12 Meeting Minutes); A336–339 (4/13/12 Meeting Materials). The Committee approved this concept in July 2012. SA15; A328–329 (7/24/12 Meeting Minutes).

Throughout 2012, CAPTRUST also worked with the Committee to develop an Investment Policy Statement for the Plans, which the Committee approved in November 2012 after extensive deliberations. SA15; *see also, e.g.*, DJA302–323 (4/12/12 email attaching draft Statement); DJA325–327 (11/19/12 Meeting Minutes). The Statement provided guidelines for evaluating and potentially replacing investment options available to participants. SA15; A383–404 (final Statement). After the Committee approved it, CAPTRUST used the framework in the Statement to provide the Committee with additional analysis of the Plans' investment options. Consistent with the Investment Policy Statement, in July 2013, at the first Committee meeting after adoption of the Statement, CAPTRUST provided "relative rankings [of investment alternatives] against appropriate indexes and within appropriate peer groups." SA15 (quotation marks omitted); *see also* A1126–1128 (7/31/13 Meeting Minutes). In particular, CAPTRUST provided the Committee with a quantitative benchmarking analysis comparing the three- and five-year returns of the hundreds of options in the Plans' lineup against the returns

31

of other options in their respective peer groups, to the extent appropriate peer groups were available. A609, A633–641 (7/31/13 Meeting Materials).

In sum, the July 2013 benchmarking presentation was not CAPTRUST's first evaluation of the Plans' investment options, and Plaintiffs have no genuine basis to criticize the analysis CAPTRUST performed for that presentation.

Plaintiffs also attempt to criticize the July 2013 benchmarking analysis because it purportedly "contained various errors and omissions." Br. 35. Those critiques are likewise baseless: The cited sources do not identify any "errors" in the benchmarking analysis, and the only "omissions" Plaintiffs point to are the data underlying the analysis and qualitative information like what CAPTRUST used in a different analysis for the University of Maine System. *Id.* (citing A712–714 (Dominguez Rep. ¶¶ 68–69); A2322–2335 (Pls.' LR 56.1 Stmt. ¶¶ 228–250)). Plaintiffs offer no support for the notion that ERISA required CAPTRUST to include this information in the July 2013 benchmarking presentation, or that adding this information would have made any difference to the Committee.

Finally, Plaintiffs say that Cornell thought CAPTRUST's evaluation of the CREF Stock Account was "fundamentally unreliable," and that CAPTRUST recommended retaining the TIAA Real Estate Account "without any evaluation." Br. 17. Again, the record does not support these assertions. As to the CREF Stock Account, a member of the Committee testified not that CAPTRUST's evaluation

32

was "unreliable," but instead that existing potential benchmarks for the CREF Stock Account—a unique investment option without ready comparators—were not a reliable basis to eliminate the fund from the Plans' lineup.[3] As to the TIAA Real Estate Account, Plaintiffs' own cited evidence belies their assertion,[4] and in any event CAPTRUST developed its own customized benchmark to evaluate this fund. DJA106 (Strodel Dep. at 145:8–24). Plaintiffs' mischaracterizations of the record provide no reason to disturb the judgment below.

### C. Plaintiffs Failed To Raise A Genuine Issue Of Material Fact About Lower-Cost Share Classes.

In addition to their claims challenging the prudence of various investment options, Plaintiffs claimed that Defendants should have considered or selected

---

[3] A1105–1107 (Bursic Dep. at 217:3–219:8, cited at Br. 17) ("CAPTRUST explained right from the very beginning this is an estimation . . . [W]e know that there's no reliable benchmark. It's just not out there. So we all took that for what it was worth; in other words, these yellow triangles on one level showed some concern but did they really reflect the performance of CREF or the inadequacy of the measurement function? . . . So we as a group decided *we are not going to ask everybody at Cornell to stop putting money into CREF because of these fundamentally unreliable yellow triangles* . . . We have to give some responsibility to the participant to decide what it is they want to do for an otherwise reasonably credible fund.") (emphasis added).

[4] A1459 (Bursic Dep. at 112:9–15, cited at Br. 17) (Q: "Did you review to see if there was any other performance-related information provided by CAPTRUST for the TIAA Real Estate fund prior to this [July 31, 2013] presentation?" A: "*I do recall seeing a detailed fund sheet on TIAA Real Estate*.") (emphasis added).

33

lower-cost share classes sooner than they did. The district court correctly entered summary judgment in CAPTRUST's favor on this claim too.

During its first presentation to Cornell in January 2012, CAPTRUST recommended that Cornell consider the "[u]se of lowest priced share classes." SA47. As the district court explained, that undisputed fact required summary judgment in CAPTRUST's favor. No reasonable factfinder could conclude that CAPTRUST breached the duty of prudence with regard to the use of lower-cost share classes, given that CAPTRUST had recommended consideration of those share classes "within the three weeks after it was retained." *Id.* Plaintiffs have not challenged that holding on appeal. *See* Br. 48–50. Any challenge is therefore waived, and summary judgment on this claim should be affirmed.[5]

## III. Plaintiffs Have Waived All Arguments About Any Other Claims Against CAPTRUST.

All of the arguments Plaintiffs have raised on appeal about their claims against CAPTRUST relate exclusively to the prudence claims in Count V. *See* Br. 2 (Pls.' Issues #1–3). Any grievances Plaintiffs may have had about their other claims against CAPTRUST are therefore waived. That includes their claims against CAPTRUST in Counts III and IV of the amended complaint.

---

[5] Summary judgment on this prudence claim should also be affirmed for the reasons set forth in the Cornell Defendants' brief at Section II.C.

Count III asserted that Defendants imprudently allowed the Plans to pay unreasonable administrative fees to the Plans' recordkeepers. A172–174 (Compl. ¶¶ 220–227). The district court dismissed this claim with regard to CAPTRUST because it had no fiduciary duties relating to the payment of recordkeeping fees. SA74–75. On appeal, Plaintiffs' arguments about this claim relate exclusively to the Cornell Defendants, *see* Br. 50–60; they have not challenged the holding that CAPTRUST had no fiduciary duties in this area.

Count IV was closely related to Count III. It asserted that Defendants engaged in prohibited transactions under ERISA by allowing the Plans to pay unreasonable fees to the Plans' recordkeepers. A174–175 (Compl. ¶¶ 228–232). The district court rejected this claim at the motion-to-dismiss stage as to all Defendants. SA71–74. On appeal, Plaintiffs have challenged that dismissal only with regard to the Cornell Defendants. *See* Br. 60–62. To the extent their arguments could be construed as also seeking to revive this claim as to CAPTRUST, those arguments have been waived and, in any event, should be rejected. CAPTRUST can be liable for alleged prohibited transactions with the Plans' recordkeepers only if CAPTRUST owed fiduciary duties with regard to recordkeeping fees. *See* 29 U.S.C. § 1106(a)(1) (prohibiting "a *fiduciary*" from engaging in certain transactions) (emphasis added). Again, the district court held that CAPTRUST owed no such duties, SA74–75, and Plaintiffs have not

35

challenged that holding on appeal. For these reasons, except with regard to the theories in Count V discussed in Sections I and II above, any arguments Plaintiffs may have had in favor of reviving their claims against CAPTRUST are waived.[6]

## IV.    Plaintiffs Are Not Entitled To A Jury Trial.

If this Court reverses any portion of the judgment, it should also hold that Plaintiffs have no right to a jury trial. Nothing in the text of ERISA gives Plaintiffs the right to try their claims to a jury. As a result, whether Plaintiffs have a right to a jury depends on the Seventh Amendment, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

Plaintiffs have a right to a jury trial only when they seek legal, as opposed to equitable, relief. *See, e.g.*, *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). To determine whether a plaintiff seeks legal or equitable relief, courts apply a two-prong test. First, they "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42

---

[6] The only potential exception is Plaintiffs' argument about the end date of the class period as defined by the district court. *See* Br. 62. For the reasons set forth in the Cornell Defendants' brief at Section III.C, this Court should not reach that issue.

36

(1989). Second, they "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.*

As the district court recognized, the first prong suggests that Plaintiffs have no right to a jury trial: Their claims are plainly equitable. Traditionally, claims for breach of fiduciary duty were "within the jurisdiction of the equity courts." *Pereira*, 413 F.3d at 338. ERISA provisions about fiduciary duties "codify and make applicable to ERISA fiduciaries . . . principles developed in the evolution of the law of trusts," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989), and "[t]rusts are, and always have been, the bailiwick of the courts of equity." *Amara*, 563 U.S. at 439–40.

The second prong likewise favors the conclusion that Plaintiffs have no right to a jury trial because their requested relief is equitable. Plaintiffs have never disputed that their requests for injunctive and declaratory relief are equitable. They contend only that their request for monetary relief—labeled in the complaint as a request for a "surcharge" and an amount that would "make good to the Plans all losses" caused by any breaches—is legal relief. *See, e.g.*, DJSA11–12.

The Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), forecloses Plaintiffs' argument. *Amara* held that, in an ERISA fiduciary breach case, the fact that "relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." *Id.* at 441. Courts

37

sitting in equity historically had "the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty." *Id.* In fact, "prior to the merger of law and equity," a "monetary remedy against a trustee, sometimes called a 'surcharge,' was ***exclusively equitable***." *Id.* at 442 (quotation marks omitted and emphasis added) (collecting case law and treatises on the common law of trusts); *see also, e.g.*, *Duvall v. Craig*, 15 U.S. 45, 56 (1817) ("A trustee . . . is, in general, only suable in equity."). Because an ERISA fiduciary is "analogous to a trustee," *Amara* held that a monetary award against a fiduciary under ERISA is equitable. 563 U.S. at 442.

*Amara* thus confirms that the monetary relief Plaintiffs are seeking is equitable. The district court nevertheless treated the requested relief as legal and denied Defendants' motion to strike the jury demand, reasoning that this Court's decision in *Pereira* required that result. Although the district court questioned whether *Pereira* was correctly decided, it concluded that "unless and until the case is overruled or clear Supreme Court precedent intervenes, this Court must follow it." DJSA15.

The Supreme Court's 2011 decision in *Amara* post-dates this Court's decision in *Pereira*. To the extent they conflict, *Amara* controls. So if this Court remands for further proceedings, it should hold that plaintiffs who seek monetary relief in ERISA fiduciary breach cases, including Plaintiffs in this case, have no

38

right to a jury trial. That would comport with this Court's other post-*Amara* decisions on this topic. *See N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (explaining that "monetary losses" flowing from a breach of fiduciary duty under ERISA are "true equitable relief"). It would also align this Court's precedents with district court decisions within this Circuit and decisions from other courts nationwide, the vast majority of which have held that plaintiffs lack a right to a jury trial in cases like this one.[7]

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment. If the Court reverses and remands for further proceedings, the Court should instruct that if any claim proceeds to a trial, the district court must conduct a bench trial rather than a jury trial.

---

[7] *See, e.g.*, *Divane v. Northwestern Univ.*, 953 F.3d 980, 994 (7th Cir. 2020), *cert. granted on other grounds*, No. 19-1401 (U.S. July 2, 2021); *Tracey v. MIT*, 395 F. Supp. 3d 150, 154 (D. Mass. 2019); *Perez v. Silva*, 185 F. Supp. 3d 698, 702 (D. Md. 2016); *McCool v. AHS Mgmt. Co.*, No. 19-cv-1158, 2021 WL 826756, at *6 (M.D. Tenn. Mar. 4, 2021); *Ramos v. Banner Health*, No. 15-cv-2556, 2019 WL 1558069, at *4 (D. Colo. Apr. 10, 2019), *aff'd*, 1 F.4th 769 (10th Cir. 2021); *Sacerdote v. New York Univ.*, No. 16-cv-6284, Dkt. 122 (S.D.N.Y. Dec. 19, 2017), *appeal pending* (2d Cir.); *Cates v. Columbia Univ.*, No. 16-cv-6524, Dkt. 140 (S.D.N.Y. Jan. 25, 2018).

Dated: July 27, 2021

Respectfully submitted,

By: */s/ Eric S. Mattson*
Eric S. Mattson
Joseph R. Dosch
Caroline A. Wong
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
emattson@sidley.com
jdosch@sidley.com
caroline.wong@sidley.com

*Attorneys for Defendant-Appellee-Cross-Appellant CapFinancial Partners, LLC*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the type-volume limitations of Fed. R. App.

P. 28.1(e)(2)(B), as modified by Local Rule 28.1.1(b), because, excluding the parts

of the brief exempted by Fed. R. App P. 32(f), this brief contains 8,813 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

2016 in 14-point Times New Roman font.


Dated: July 27, 2021

                                        */s/ Eric S. Mattson*
                                        Eric S. Mattson

                                        *Attorney for Defendant-Appellee-*
                                        *Cross-Appellant CapFinancial*
                                        *Partners, LLC*

41

## **CERTIFICATE OF SERVICE**

I certify that on July 27, 2021, a copy of the foregoing was electronically

filed and served on all counsel of record using the Court's CM/ECF System.

*/s/ Eric S. Mattson*
Eric S. Mattson

*Attorney for Defendant-Appellee-Cross-Appellant CapFinancial Partners, LLC*

42